UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FREIHIWET G. TESFAMARIAM,

        Plaintiff,

    v.

CAROLYN W. COLVIN,

        Defendant.

Case No. 15-CV-04966-LHK

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 22

Plaintiff Freihiwet G. Tesfamariam ("Plaintiff") appeals a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.  Before the Court are Plaintiff's motion for summary judgment, ("Pl. MSJ") ECF No. 21, and the Commissioner's cross-motion for summary judgment, ("Def. MSJ") ECF No. 22.  Having considered the parties' briefs and the record in the case, for the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the case for further proceedings consistent with this order.

1

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.      BACKGROUND

## A.  Plaintiff's Age and Educational, Vocational and Medical History

Plaintiff was born in 1991.  Administrative Record ("AR") 142.  Plaintiff failed the California High School Exit Exam and has no work experience.  AR 31, 177.

Plaintiff suffers from major depressive disorder, anxiety disorder, personality disorder, a learning disorder and developmental delay.  AR 23, 304, 375.  Plaintiff also suffers from a panic disorder with agoraphobia.  AR 310.

## B.  Procedural History

On March 31, 2012, Plaintiff applied for a period of disability and disability insurance benefits and alleged that she had become disabled on March 31, 2012.  AR 21.  Plaintiff alleged disability resulting from a learning disability, dyslexia and antisocial behavior.  AR 102. Plaintiff's application was denied initially and upon reconsideration.  AR 100–06, 110–15.  An Administrative Law Judge ("ALJ") conducted a hearing on May 1, 2014.  AR 37–99.  On June 13, 2014, the ALJ issued a written decision concluding that Plaintiff was not disabled and therefore was not entitled to benefits.  AR 21–32.

The ALJ applied the five-step evaluation process for determining disability described in 20 C.F.R. § 404.1520(a).  AR 23–31.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2012, the alleged disability onset date.  AR 23.  At step two, the ALJ concluded that Plaintiff suffers from a combination of severe impairments consisting of major depressive disorder, anxiety disorder with panic attacks, personality disorder and a learning disorder.  *Id*.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 23–24.

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined by 20 CFR 404.1567(c), with the following non-exertional restrictions: moderate limitations in understanding, remembering and carrying out detailed instructions.  AR 26.  At the hearing, the ALJ asked the vocational expert if a person with

2

United States District Court
Northern District of California

1    Plaintiff's limitations could find work in the national economy.  AR 31.  The vocational expert

2    testified that a person with Plaintiff's limitations could perform medium unskilled work such as

3    kitchen helper or hand packager.  *Id.*

4        The ALJ skipped step four because Plaintiff had no prior work experience.  *Id.*  At step

5    five, the ALJ found there were jobs that exist in significant numbers in the national economy that

6    Plaintiff can perform.  AR 32.  As a result, the ALJ concluded that Plaintiff is not disabled as

7    defined in the Social Security Act.  *Id.*  The Appeals Council denied Plaintiff's request for review

8    on September 29, 2015, making the ALJ's decision the final decision of the Commissioner.  AR 1.

9    Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision in this

10   Court on October 29, 2015.  ECF No. 1.

11       Plaintiff filed the instant action seeking review of the ALJ's decision on October 29, 2015.

12   ECF No. 1.  On April 1, 2016, Plaintiff filed a motion for summary judgment.  Pl. MSJ.  The

13   Commissioner filed a cross-motion for summary judgment and opposition to Plaintiff's motion on

14   April 22, 2016.  Def. MSJ.  Plaintiff filed a reply on May 9, 2016.  ("Pl. Reply"), ECF No. 23.

15   **II.      LEGAL STANDARD**

16       **A.  Standard of Review**

17       This Court has the authority to review the Commissioner's decision to deny benefits.  42

18   U.S.C. § 405(g).  The Court will disturb the Commissioner's decision "only if it is not supported

19   by substantial evidence or is based on legal error."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

20   F.3d 595, 599 (9th Cir. 1999).  In this context, "substantial evidence" means "more than a mere

21   scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might

22   accept as adequate to support the conclusion."  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir.

23   1995) (per curiam); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When

24   determining whether substantial evidence exists to support the Commissioner's decision, the Court

25   examines the administrative record as a whole, considering adverse as well as supporting

26   evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

27

28   Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

1    Where evidence exists to support more than one rational interpretation, the Court must defer to the

2    decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

3        **B.  Standard for Determining Disability**

4        The Social Security Act defines disability as the "inability to engage in any substantial

5    gainful activity by reason of any medically determinable physical or mental impairment which can

6    be expected to result in death or which has lasted or can be expected to last for a continuous period

7    of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe

8    that a claimant is unable to do her previous work and cannot "engage in any other kind of

9    substantial gainful work which exists in the national economy," given her age, education and work

10   experience.  42 U.S.C. § 423(d)(2)(A).

11       "ALJs are to apply a five-step sequential review process in determining whether a claimant

12   qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

13   At step one, the ALJ determines whether the claimant is performing "substantial gainful activity."

14   20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  If not, the analysis proceeds to

15   step two.  At step two, the ALJ determines whether the claimant suffers from a severe impairment

16   or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If not, the claimant is not

17   disabled.  If so, the analysis proceeds to step three.  At step three, the ALJ determines whether the

18   claimant's impairment or combination of impairments meets or equals an impairment contained in

19   20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the

20   claimant is disabled.  If not, the analysis proceeds to step four.  At step four, the ALJ determines

21   whether the claimant has the residual functioning capacity to perform his or her past relevant

22   work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  If not, the analysis

23   proceeds to step five. At step five, the ALJ determines whether the claimant can perform other

24   jobs in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.

25   If not, the claimant is disabled.

26       "The burden of proof is on the claimant at steps one through four, but shifts to the

27

28
Case No. 15-CV-04966-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

1    Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden

2    through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines

3    at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

**III.    DISCUSSION**

5        Plaintiff raises four distinct objections to the ALJ's determination regarding Plaintiff's

6    disability. First, Plaintiff claims the ALJ committed legal error when the ALJ failed to state

7    specific and legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist Dharitri

8    Mahapatra, M.D. Pl. MSJ at 1. Second, Plaintiff argues the ALJ committed similar legal error in

9    failing to "explain his rejection of certain limitations contained in examining psychologist Janice

10   Marinos, Ph.D.'s opinion." *Id.* Third, Plaintiff asserts the ALJ erred when the ALJ "ignored

11   significant probative evidence relating to" Plaintiff's agoraphobia. *Id.* Fourth, Plaintiff argues

12   that the ALJ erred by failing to address other probative evidence in the record and by performing

13   an incorrect non-compliance analysis. *Id.*

14       The Court first summarizes the relevant medical evidence and then turns to each of

15   Plaintiff's arguments.

**A.   Relevant Medical Evidence**

17       "There are three types of medical opinions in social security cases: those from treating

18   physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc.*

19   *Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given

20   to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

21   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in

22   turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.*

23       Accordingly, when evaluating medical evidence, an ALJ must give a treating physician's

24   opinion "substantial weight." *Bray*, 554 F.3d at 1228. "When evidence in the record contradicts

25   the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for

26   discounting the treating physician's opinion, supported by substantial evidence." *Id.* (quoting

27

28   Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Lester*, 81 F.3d at 830).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors, are correct."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  "However, 'the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.'"  *Id.* (quoting *Thomas*, 278 F.3d at 957).

The record evidence regarding Plaintiff's mental condition is summarized below:

### 1.   Dharitri Mahapatra, M.D. (Treating Psychiatrist)

Plaintiff regularly underwent mental health treatment at the Santa Clara Valley Medical Center, where she often saw psychiatrist Dharitri Mahapatra, M.D. ("Dr. Mahapatra").  AR 304, 310–12, 315, 319, 397, 403–06, 422–29.  Dr. Mahapatra repeatedly diagnosed Plaintiff with recurrent and moderate major depressive disorder and panic disorder with agoraphobia.  *Id.*

On June 21, 2011, Plaintiff saw Dr. Mahapatra for an initial medical evaluation.  AR 344–46.  Dr. Mahapatra assessed Plaintiff with recurrent and moderate major depressive disorder, panic disorder with agoraphobia, dyslexia, asthma and a GAF score of 55–60.  AR 345.  Dr. Mahapatra prescribed an antidepressant, Zoloft.  *Id.*

In July 2011, Plaintiff reported feeling depressed, tired, panicked, and anxious "off and on."  AR 340.  Dr. Mahapatra increased Plaintiff's Zoloft prescription and prescribed an antianxiety medication, Buspar.  AR 341–42.  Plaintiff missed several appointments in August and September 2011.  AR 328-37.  In October 2011, Plaintiff saw Dr. Mahapatra for a scheduled visit and reported that she continued to struggle with anxiety and depression and that she had been noncompliant with her medications.  AR 326.

After several additional missed appointments, Plaintiff saw Dr. Mahapatra again on January 2012.  AR 319, 323-25.  Dr. Mahapatra reported that Plaintiff continued to have symptoms of recurrent and moderate major depressive disorder and panic disorder with agoraphobia.  AR 319.  Dr. Mahapatra renewed Plaintiff's Zoloft prescription and increased her

United States District Court
Northern District of California

Case No. 15-CV-04966-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

1    prescription for Buspar.

2        In February 2012, Plaintiff met with Dr. Mahapatra and reported that Plaintiff had been

3    compliant with her medications and that her symptoms improved with medication.  AR 315.  At

4    Plaintiff's subsequent appointment in March 2012, Dr. Mahapatra reduced Plaintiff's prescriptions

5    for Zoloft and Buspar and added a prescription for Benadryl.  AR 310.

6        In April 2012, Plaintiff reported to Dr. Mahapatra that Plaintiff was "mostly compliant

7    with her medications," and that the symptoms of her depression and anxiety were improved.  AR

8    304.  Dr. Mahapatra increased Plaintiff's Benadryl prescription.  *Id.*

9        In August 2012, Dr. Mahapatra noted that Plaintiff "report[ed] not doing too well" and that

10   Plaintiff had recently been hospitalized for being depressed and suicidal.  AR 403.  Additionally,

11   Plaintiff reported that she had stopped taking medication after her previous visit with Dr.

12   Mahapatra.  *Id.*  Dr. Mahapatra renewed Plaintiff's prescriptions for Zoloft and Benadryl.

13       In September 2012, Dr. Mahapatra noted that Plaintiff was again compliant with her

14   medications, was "doing better than before," and had recently attended a bowling party.  AR 397.

15   However, Dr. Mahapatra noted that Plaintiff "continue[d] to feel depressed and anxious" and had

16   "difficulty getting out of her house."  *Id.*  Dr. Mahapatra renewed Plaintiff's prescription for

17   Benadryl, increased her prescription for Zoloft, and added a prescription for Buspar.  AR 397-98.

18       In January 2013, Plaintiff reported to Dr. Mahapatra that Plaintiff was compliant with her

19   medications and that Plaintiff's symptoms of depression and anxiety were well controlled with the

20   medications.  AR 405.  However, Dr. Mahapatra also noted that Plaintiff isolated herself and

21   would not leave the house.  AR 405.

22       In March 2013, Dr. Mahapatra noted that Plaintiff reported the she had been compliant

23   with her medications and that her symptoms were generally well controlled, though Plaintiff

24   continued to struggle with lack of motivation and could not be outdoors for a long time.  AR 426.

25   Dr. Mahapatra increased Plaintiff's prescription for Zoloft and renewed Plaintiff's prescriptions

26   for Benadryl and Buspar.  *Id.*

27
                                          7
28

In April 2013, Plaintiff reported to Dr. Mahapatra that Plaintiff had not been taking medications for the past month due to a change in insurance coverage.  AR 424.  Plaintiff's mother indicated that Plaintiff's new insurance would cover Plaintiff's medication, and Dr. Mahapatra restarted Plaintiff's prescriptions for Zoloft, Buspar, and Benadryl.  AR 424-25.

In May 2013, Plaintiff reported that she still had not been able to fill her prescriptions through Plaintiff's new insurance.  AR 422.  Plaintiff additionally reported that she did not feel any improvement in her symptoms when taking her medication.  *Id.*  Dr. Mahapatra noted that Plaintiff "has issues around people and isolates herself, does not wish to get out of the house[, and] feels anxious around the crowded places."  *Id.*  Dr. Mahapatra wrote new prescriptions for Zoloft, Benadryl, and Buspar that Plaintiff could fill under her new insurance and added a prescription for Prozac.  AR 423.

In August 2013, Dr. Mahapatra completed a Work Capacity Evaluation regarding Plaintiff.  AR 446–49.  Dr. Mahapatra opined that Plaintiff had extreme limitations in the following areas: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for an extended period; (4) interacting appropriately with the general public; and (5) setting realistic goals or making plans independently of others.  AR 447–49.  Dr. Mahapatra stated that Plaintiff had marked limitation in the following areas: (1) remembering locations and work-like procedures; (2) understanding and remembering very short and simple instructions; (3) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (4) sustaining an ordinary routine without special supervision; and (5) traveling in unfamiliar places or using public transportation. *Id.*  Dr. Mahapatra indicated Plaintiff had moderate limitations in the following areas: (1) carrying out very short and simple instructions; (2) asking simple questions or requesting assistance; (3) maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and (4) being aware of normal hazards and taking appropriate precautions.  *Id.*

Case No. 15-CV-04966-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

### 2.  Tedde M. Rinker, D.O. (Treating Psychiatrist)

Plaintiff also underwent treatment with psychiatrist Tedde M. Rinker, D.O. ("Dr. Rinker") from September 2013 to April 2014.  AR 670–78.  During Plaintiff's initial visit, Plaintiff complained of depression, passive suicidal ideation, low motivation, and insomnia.  AR 680.  Dr. Rinker diagnosed Plaintiff with recurrent and moderate major depressive disorder, panic disorder with agoraphobia, and anxiety disorder.  *Id.*  Dr. Rinker prescribed Prozac and Busbar to Plaintiff.  *Id.*

The following month, Plaintiff reported to Dr. Rinker that Plaintiff rarely left the house and did not like interacting with other people or being outside.  AR 678.  Plaintiff also reported that she was still affected by depression, but that the depression had somewhat subsided.  *Id.*

In November 2013, Dr. Rinker noted that Plaintiff had arrived for her appointment, but that Plaintiff left when Plaintiff's mother could not find parking.  AR 677.  Dr. Rinker went on to explain that Plaintiff was afraid of being alone in public places and was too fearful to attend sessions without her mother.  *Id.*  In December 2013, Plaintiff met with Dr. Rinker and reported that she had been taking her medication and that her panic attacks had decreased in frequency but still occurred.  AR 675.  Between December 2013 and March 2014, Dr. Rinker noted several missed appointments, but attributed these missed appointments to Plaintiff's agoraphobia.  AR 672–75.

In April 2014, Dr. Rinker noted that Plaintiff's depression was controlled by Plaintiff's medications.  AR 670-71.  However, Dr. Rinker stated that Plaintiff's anxiety was reduced but not resolved, and that Plaintiff continued to suffer from agoraphobia and was almost completely housebound.  AR 671.

### 3.  Janine Marinos, Ph.D. (Examining Psychologist)

In July 2012, Janine Marinos, Ph.D. ("Dr. Marinos"), a consultative examiner, conducted a psychological evaluation of Plaintiff and reviewed Plaintiff's records.  AR 368–71.  Plaintiff reported to Dr. Marinos that Plaintiff had applied for benefits because "I can't do nothing, I have

United States District Court
Northern District of California

9

no reading skills, no math skills, no social skills whatsoever." AR 368. Dr. Marinos diagnosed Plaintiff with major depressive disorder based on Plaintiff's history and a GAF score of 51–60. AR 371. Dr. Marinos noted that Plaintiff likely was able to understand and carry out simple job instructions but that Plaintiff may have moderate difficulty maintaining concentration, persistence, or pace; interacting with others; and coping with stress in a job setting. AR 371.

### 4. R.E. Brooks, M.D. (Non-examining State Agency Opinion)

In April 2013, R.E. Brooks, M.D. ("Dr. Brooks"), assessed Plaintiff's functional abilities based on a review of Plaintiff's medical records, but Dr. Brooks did not personally examine Plaintiff. AR 416–19. Dr. Brooks opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. AR 416. Dr. Brooks also noted Plaintiff was not significantly limited in Plaintiff's ability to understand, remember and carry out very short and simple instructions or in the ability to perform activities with a schedule, maintain regular attendance and be punctual within customary tolerances. AR 417–19.

### 5. Ashok I. Khushalani, M.D. (Non-examining Testifying Psychiatry Expert)

At the hearing before the ALJ on May 1, 2014, the ALJ heard testimony from Ashok I. Khushalani, M.D. (Dr. Khushalani), a testifying psychiatry expert who did not examine Plaintiff. AR 42-49. Dr. Khushalani testified based on his review of Plaintiff's medical records. AR 44. Dr. Khushalani testified that Plaintiff had been diagnosed as having major depressive disorder and panic disorder with agoraphobia. AR 44, 48. According to Dr. Khushalani, the Listings categorize agoraphobia as a type of panic disorder and not as a separate disorder. AR 48.

Dr. Khushalani testified that Plaintiff had a history of noncompliance with her medications, and that "it appears that when [Plaintiff is] not on the medicines, then there's a problem but when [Plaintiff is] on medication, she's stabilized according to her notes." AR 44. As to Plaintiff's limitations, Dr. Khushalani opined that "in terms of activities of daily living, she's mildly affected. Social functioning is moderately affected. Maintaining persistence,

10

United States District Court
Northern District of California

1    concentration, and pace is mildly affected."  AR 49.

2    **B.  The ALJ's Treatment of Dr. Mahapatra's Opinion**

3        Plaintiff moves for summary judgment and argues that the ALJ committed legal error by

4    failing to state "specific and legitimate reasons" for giving little weight to Dr. Mahapatra's

5    opinion, in which Dr. Mahapatra opined that Plaintiff had marked or extreme limitations in several

6    different functional, work-related categories.  Pl. MSJ at 11.  Commissioner opposes Plaintiff's

7    motion and moves for summary judgment on this issue, arguing that the ALJ reasonably evaluated

8    Dr. Mahapatra's opinion.  Def. MSJ at 12.

9        "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing

10   nothing more than ignoring it, asserting without explanation that another medical opinion is more

11   persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his

12   conclusion."  *Garrison*, 759 F.3d at 1012-13.  In the instant case, the ALJ erred by assigning little

13   weight to the opinion of Dr. Mahapatra by asserting without explanation that Dr. Mahapatra's

14   opinion was not supported by a majority of the objective medical evidence.  The ALJ addressed

15   Dr. Mahapatra's opinions in a single, brief paragraph:

16           Dharitri Mahapatra, the claimant's treating psychiatrist, opined the
             claimant had marked and extreme limitations in several functional
17           areas related to social functioning and to maintaining concentration
             persistence or pace (Ex. 11F).  This opinion is given little weight as
18           it is not supported by a majority of the objective medical evidence.

19   AR 30.  The ALJ did not discuss any of the specifics of Dr. Mahapatra's opinion, nor did the ALJ

20   cite any specific evidence to support the ALJ's statement that Dr. Mahapatra's opinion was not

21   supported by the medical record.  Therefore, the ALJ committed legal error by failing to provide

22   "specific and legitimate reasons" for giving little weight to the opinion of treating psychiatrist Dr.

23   Mahapatra.  *Lester*, 81 F.3d at 831.

24       The Commissioner points to several sections of the ALJ's opinion that differ from Dr.

25   Mahapatra's opinion to argue that the ALJ did provide "specific and legitimate reasons" for

26   discounting Dr. Mahapatra's opinion.  Def. MSJ at 13–15.  However, the ALJ did not address any

27

28
     Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  of these alleged discrepancies in the context of Dr. Mahapatra's opinion, and the Court cannot

2  engage in "post hoc rationalizations that attempt to intuit what the [ALJ] may have been thinking"

3  when the ALJ discounted Dr. Mahapatra's opinion.  *Bray*, 554 F.3d at 1226.  Thus, the ALJ's

4  unsupported, conclusory statement that Dr. Mahapatra's opinion "is not supported by a majority of

5  the objective evidence" is insufficient to support disregarding the opinion of a treating physician.

6  *See Garrison*, 759 F.3d at 1008, 1013 (affirming the district court's finding that the ALJ erred by

7  "provid[ing] only a perfunctory explanation of her reasons for not giving significant weight to the

8  opinions of those [physicians] who had been treating Claimant").

9      Because the ALJ erred by assigning little weight to the opinion of treating physician Dr.

10  Mahapatra without providing specific and legitimate reasons for doing so, the ALJ's determination

11  of Plaintiff's residual functioning capacity was invalid.  *See Williams v. Colvin*, 24 F. Supp. 3d

12  901, 917 (N.D. Cal. 2014) (holding that ALJ's errors in weighing evidence meant that the ALJ's

13  residual functioning capacity determination was invalid).  For purposes of judicial efficiency, the

14  Court proceeds to address Plaintiff's remaining arguments.

15      **C.  The ALJ's Treatment of Dr. Marinos' Opinion**

16      Plaintiff also moves for summary judgment on the basis that the ALJ improperly, and

17  implicitly, rejected the opinion of examining physician Dr. Marinos when the ALJ assessed that

18  Plaintiff had moderate limitations in understanding, remembering, and carrying out detailed

19  instructions and that Plaintiff had a slight limitation in responding to work pressures and changes.

20  Pl. MSJ at 13.  Additionally, Plaintiff challenges the ALJ's decision to define a moderate

21  limitation as a ten percent limitation.  *Id.* n.3.  The Commissioner opposes Plaintiff's motion and

22  moves for summary judgment on this issue arguing that the ALJ reasonably evaluated Dr.

23  Marinos' opinion and gave Dr. Marinos' opinion significant weight.  Def. MSJ at 15.

24      As Plaintiff recognizes, the ALJ's opinion explicitly gave Dr. Marinos' opinion

25  "significant weight."  AR 30.  Dr. Marinos opined that the Plaintiff could understand and carry out

26  simple job instructions but "may have moderate difficulty maintaining concentration, interacting

27

28  Case No. 15-CV-04966-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

1   with others, and coping with stress in a job setting." AR 371.  By comparison, with regard to

2   these criteria, the ALJ concluded that Plaintiff "has no limits in understanding, remembering and

3   carrying out short simple instructions" but "is moderately limited in understanding, remembering

4   and carrying out detailed instructions," "moderately limited in regard to working with the public,"

5   and "has a slight limitation in responding appropriately to work pressures and changes in the

6   workplace." AR 26.  Thus, the ALJ and Dr. Marinos both concluded that Plaintiff could

7   understand and carry out simple job instructions and that Plaintiff would have some limitations

8   with regard to handling interactions with others and managing work stress.

9        Plaintiff argues that two differences between Dr. Marinos' opinion and the ALJ's findings

10   regarding Plaintiff's residual functioning capacity merit reversal: (1) according to Plaintiff, Dr.

11   Marinos opined that Plaintiff was limited to carrying out only simple job instructions, while the

12   ALJ found that Plaintiff could carry out detailed instructions with moderate limitations; and (2)

13   according to Plaintiff, Dr. Marinos opined that Plaintiff had "moderate" difficulty coping with

14   stress in a job setting, while the ALJ found Plaintiff had a "slight" limitation responding to work

15   pressures.  AR 26, 371.

16        The ALJ did not err in the ALJ's treatment of Dr. Marinos' opinion.  First, Plaintiff's

17   characterization of Dr. Marinos' opinion regarding Plaintiff's ability to understand instructions is

18   inaccurate.  Dr. Marinos did not opine that Plaintiff is limited to carrying out *only* simple job

19   instructions, but merely notes that "she seems able to understand and carry out simple job

20   instructions." AR 371.  Dr. Marinos does not provide an opinion on Plaintiff's ability to carry out

21   detailed job instructions.  Thus, the ALJ's finding that Plaintiff has a moderate limitation in

22   carrying out detailed instructions does not contradict Dr. Marinos' opinion.  AR 26.

23        Second, as to Plaintiff's ability to deal with workplace stress, the limitations included in

24   the ALJ's findings need not be identical to the limitations identified in Dr. Marinos' opinion.

25   Rather, the appropriate inquiry is whether the ALJ's finding regarding Plaintiff's residual

26   functioning capacity is consistent with Dr. Marinos' opinion.  *See Turner v. Comm'r Soc. Sec.*,

United States District Court
Northern District of California

13

1    613 F.3d 1217, 1222–23 (9th Cir. 2010) (accepting limitations "entirely consistent" with but not

2    identical to those in the physician's evaluation); *Lyons v. Colvin*, No. CV 14-00605-DMG, 2015

3    WL 9701184, at *24 (C.D. Cal. June 11, 2015) (citing *Turner*, 613 F.3d at 1222-23 for the

4    proposition that "[w]hile an ALJ's RFC [residual functioning capacity] finding need not be

5    identical to credible medical opinions, it does need to be consistent with them").  In the instant

6    case, Dr. Marinos opined that Plaintiff "may have moderate difficulty maintaining concentration,

7    interacting with others, and coping with stress in a job setting."  AR 371.  The ALJ found that

8    Plaintiff would have moderate difficulty in understanding, remembering, and carrying out detailed

9    instructions, moderate difficulty in interacting with the public, and a slight limitation in handling

10   work pressures.  AR 26.  Although not identical to Dr. Marinos' opinion, the ALJ's findings

11   overall are consistent with Dr. Marinos' opinion that Plaintiff *may* have moderate limitations in

12   these areas.  Therefore, the ALJ did not err by assessing Plaintiff with a slight limitation in

13   Plaintiff's ability to cope with stress at work.

14          Even if the minor difference between Dr. Marinos' opinion and the ALJ's finding

15   regarding Plaintiff's residual functioning capacity was error, Plaintiff has not alleged how such

16   error would be harmful.  An error is harmless if it is "inconsequential to the ultimate nondisability

17   determination in the context of the record as a whole."  *Molina v. Astrue*, 674 F.3d 1104, 1122

18   (9th Cir. 2012); *see also McGarrah v. Colvin*, --- Fed. App'x ----, 2016 WL 2990426 at *1 (9th

19   Cir. May 24, 2016); (also holding minimal errors were harmless and therefore not grounds for

20   remanding or overturning the ALJ's decision).  The minor discrepancy between the ALJ's finding

21   that Plaintiff was slightly limited in Plaintiff's ability to respond appropriately to work pressures,

22   as opposed to Dr. Marinos' finding that Plaintiff was moderately limited in Plaintiff's ability to

23   deal with workplace stress, is too minor a discrepancy to be consequential in the outcome of the

24   ALJ's final disability determination.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th

25   Cir. 2008) (holding any error the ALJ may have committed in erroneously omitting [claimant's]

26   postural limitations was harmless because correcting the error would make no difference to the

27

28   Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    ultimate disability determination).  Therefore, any alleged error resulting from the minimal

2    discrepancy between Dr. Marinos' findings and the ALJ's opinion is harmless.

3         Finally, Plaintiff's argument, made in passing in a footnote, that the ALJ erred by generally

4    defining a moderate limitation as a ten percent limitation is unavailing.  Although Dr. Marinos did

5    not define a moderate limitation in terms of a percentage, Plaintiff does not explain or provide any

6    argument for why defining a moderate limitation as a ten percent limitation affected the ALJ's

7    finding of nondisability.  Because an error is harmless if it is "inconsequential to the ultimate

8    nondisability determination in the context of the record as a whole," *Molina*, 674 F.3d at 1122,

9    Plaintiff has not shown that the ALJ's definition of a moderate limitation requires remand.

10        Therefore, the ALJ did not err in the ALJ's treatment of Dr. Marinos' opinion.

11   **D.  The ALJ's Treatment of Plaintiff's Agoraphobia**

12        Plaintiff next moves for summary judgment on Plaintiff's claim that the ALJ erred by

13   failing to find Plaintiff's agoraphobia to be a severe impairment at step two of the sequential

14   evaluation procedure, and by failing to consider the impact of Plaintiff's agoraphobia in

15   formulating Plaintiff's residual functioning capacity.  Pl. MSJ at 14–15.  The Commissioner

16   opposes Plaintiff's motion, moves for summary judgment on this issue, and argues that the ALJ

17   sufficiently considered Plaintiff's agoraphobia when the ALJ evaluated Plaintiff's anxiety in step

18   two of the ALJ's opinion.  Def. MSJ at 16.

19        At step two, the ALJ must determine whether the claimant has a medically severe

20   impairment or combination of impairments.  20 C.F.R. § 416.920(a)(ii).  An impairment is "not

21   severe" if it "does not significantly limit [the claimant's] ability to do basic work activities."  *Id.*

22   Furthermore, if the ALJ concludes at step two that the claimant has a medically severe disability,

23   "all medically determinable impairments must be considered in the remaining steps of the

24   sequential analysis," including the ALJ's determination of Plaintiff's residual functioning

25   capacity.  *Orn*, 495 F.3d at 631 (internal quotations omitted).

26        In the instant case, the Court concludes that, contrary to Plaintiff's argument, the ALJ did

27

28   Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

consider Plaintiff's agoraphobia in the ALJ's decision. Although the ALJ did not use the word "agoraphobia," the ALJ found that Plaintiff has anxiety disorder with panic attacks. AR 23. Then, consistent with the testimony of Dr. Khushalani at Plaintiff's hearing that agoraphobia is analyzed as a type of anxiety disorder in the Listings, the ALJ discussed whether Plaintiff's condition met or medically equaled the Listing for anxiety disorder based on agoraphobia. AR 25. Specifically, Listing 12.00(F) explains that the "paragraph C criterion of [Listing] 12.06 reflects the uniqueness of agoraphobia, an anxiety disorder manifested by an overwhelming fear of leaving the home." As part of the ALJ's discussion of whether Plaintiff's impairments met or medically equaled any of the Listings, the ALJ addressed the Listing for agoraphobia, stating that "the 'C' criterion in Listing 12.06 is not met because the claimant has not had an impairment resulting in complete inability to function independently outside the area of the claimant's home. This is supported by the testimony of the claimant indicating that the claimant attends appointments." AR 25.

As to whether the ALJ erred by failing to analyze the effect of Plaintiff's agoraphobia in formulating Plaintiff's residual functioning capacity, Plaintiff argues that the ALJ improperly disregarded the evidence provided by Plaintiff's treating physicians Dr. Mahapatra and Dr. Rinker of limitations caused by Plaintiff's agoraphobia. Pl. MSJ at 15; Pl. Reply at 4. In the ALJ's discussion of Plaintiff's residual functioning capacity, the ALJ explicitly gave little weight to the opinions of both Dr. Mahapatra and Dr. Rinker. AR 30. The Court has concluded that the ALJ erred by assigning little weight to the opinion of Dr. Mahapatra without providing specific and legitimate reasons for doing so. *See supra*. Thus, to the extent the ALJ disregarded Dr. Mahapatra's opinions related to Plaintiff's limitations due to agoraphobia, the ALJ erred.

**E. The ALJ's Treatment of Other Medical Evidence**

Finally, Plaintiff moves for summary judgment on Plaintiff's claim that the ALJ committed legal error by failing to properly address Plaintiff's psychiatric hospitalizations, low intermittent GAF scores, and special education, and by performing an incorrect noncompliance analysis. Pl.

16

United States District Court
Northern District of California

1    MSJ at 16.  The Commissioner opposes Plaintiff's motion, moves for summary judgment on this

2    issue, and argues that the ALJ properly evaluated the relevant medical evidence and was not

3    required to follow the SSA's noncompliance analysis framework.  Def. MSJ at 16–18.

4          Although the ALJ "need not discuss all evidence presented to [the ALJ,]" the ALJ "must

5    explain why 'significant probative evidence has been rejected.'"  *Van Ickle v. Astrue*, 385 Fed.

6    App'x 739, 741 (9th Cir. 2010) (quoting *Vincent*, 739 F.2d at 741).  Therefore, the Court must

7    determine whether each piece of evidence Plaintiff has raised is significant and probative.  If any

8    of the evidence is significant and probative, the Court must determine whether the ALJ

9    sufficiently discussed the evidence.  The Court will address each piece of evidence raised by

10   Plaintiff in turn.

11         First, Plaintiff asserts that the ALJ committed legal error by failing to discuss Plaintiff's

12   two inpatient psychiatric hospitalizations.  Pl. MSJ at 16.  This argument is unavailing.  Plaintiff's

13   first hospitalization predated the alleged onset date of March 2012.  AR 271.  Evidence that

14   predates the alleged onset of disability is of limited relevance and therefore need not be discussed.

15   *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical

16   opinions that predate the alleged onset of disability are of limited relevance."); *see also Ingham v.*

17   *Astrue*, No. SA CV 09-931-SH, 2010 WL 1875651, at *5 (C.D. Cal. May 10, 2010) (holding that

18   evidence that "substantially predates the alleged onset of disability date" is of reduced relevancy).

19   Regarding Plaintiff's August 2012 hospitalization, the ALJ did not disregard the evidence of the

20   August 2012 hospitalization.  Rather, the ALJ dedicated an entire paragraph of the ALJ's decision

21   to specifically discussing the August 2012 hospitalization.  AR 28–29.  The ALJ noted that during

22   Plaintiff's August 2012 hospitalization Plaintiff had no problem with memory, insight, judgment,

23   eye contact, or sleep and that Plaintiff successfully participated in group therapy.  *Id.*

24         Second, Plaintiff asserts that the ALJ committed legal error by failing to discuss two of

25   Plaintiff's GAF scores.  Pl. MSJ at 16.  However, a GAF score "is a rough estimate of an

26   individual's psychological, social, and occupational functioning used to reflect the individual's

27

28   Case No. 15-CV-04966-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   need for treatment" that is "typically assessed in controlled, clinical settings that may differ from

2   work environments in important respects." *Garrison*, 759 F.3d at 1002 n.4.  Thus, although GAF

3   scores may be a useful measurement for the ALJ to consider, the ALJ is not required to consider

4   GAF scores.  *See, e.g.*, *Hughes v. Colvin*, 599 Fed. App'x 765, 766 (9th Cir. 2015) (holding that

5   the ALJ did not err in failing to address a GAF score "because a GAF score is merely a rough

6   estimate of an individual's psychological, social, or occupational functioning used to reflect an

7   individual's need for treatment, but it does not have any direct correlative work-related or

8   functional limitations").  Therefore, the ALJ did not err by failing to discuss two of Plaintiff's

9   GAF scores.

10   Third, Plaintiff claims the ALJ erred by failing to discuss Plaintiff's history of special

11   education.  Pl. MSJ at 16.  This argument is also without merit.  First, as with Plaintiff's first

12   hospitalization, Plaintiff's special education predated Plaintiff's alleged disability onset date of

13   March 2012.  AR 177.  Evidence that predates the alleged onset of disability is of limited

14   relevance and therefore need not be discussed.  *See Carmickle*, 533 F.3d at 1165 ("Medical

15   opinions that predate the alleged onset of disability are of limited relevance."); *see also Ingham*,

16   2010 WL 1875651, at *5 (holding that evidence that "substantially predates the alleged onset of

17   disability date" is of reduced relevancy).  Second, although the ALJ did not use the words "special

18   education," the ALJ did determine that Plaintiff has a learning disorder.  AR 23.  The ALJ

19   additionally discussed Plaintiff's lack of math and reading skills when determining Plaintiff's

20   residual functioning capacity.  AR 27–29.  Thus, the ALJ did not err by failing to discuss

21   Plaintiff's history of special education.

22   Finally, Plaintiff argues that the ALJ erred because the ALJ performed a flawed

23   noncompliance analysis by failing to follow the steps described in SSR 82-59, 1982 WL 31384.

24   Pl. MSJ at 16.  However, Plaintiff misunderstands the standard regarding noncompliance analysis.

25   By its own terms, the noncompliance analysis of SSR 82-59 applies only to an ALJ's assessment

26   of noncompliance for "[a]n individual who would otherwise be found to be under a disability."

27

28

United States District Court
Northern District of California

18

Case No. 15-CV-04966-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

However, in the instant case, the ALJ determined that the Plaintiff did not have a disabling impairment. AR 23–30. In making this finding, the ALJ did not rely upon Plaintiff's noncompliance with treatment. Although the ALJ made a single, passing reference to Plaintiff's history of noncompliance with medication and therapy session attendance as part of the ALJ's review of the medical evidence, AR 28, the ALJ did not use Plaintiff's noncompliance to discount the evidence of Plaintiff's impairments. Instead, the ALJ gave Plaintiff "the benefit of the doubt regarding [Plaintiff's] symptoms resulting from her major depressive disorder, anxiety disorder with panic attacks, personality disorder, and learning disorder," and incorporated the ALJ's assessment of those symptoms into the ALJ's determination of Plaintiff's residual functioning capacity. AR 29. Based on Plaintiff's residual functioning capacity, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and that Plaintiff therefore is not disabled. AR 31. Thus, because the ALJ concluded that Plaintiff did not have a disability, SSR 82-59 did not apply to the ALJ's analysis, and the ALJ did not err by failing to applying SSR 82-59.

### F. Remand to the Social Security Administration

As the Court has determined that the ALJ erred by assigning little weight to the opinion of treating physician Dr. Mahapatra without providing significant and legitimate reasons for doing so, and by subsequently failing to account for Dr. Mahapatra's opinions regarding Plaintiff's agoraphobia when formulating Plaintiff's residual functioning capacity, the Court must determine whether to remand Plaintiff's case to the SSA for payment of benefits or for additional investigation or explanation.

Plaintiff asks the Court to remand Plaintiff's case for payment of benefits. Pl. MSJ at 18. However, "if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (citing *Lewin v. Schwieker*, 654 F.2d 631, 635 (9th Cir. 1981)). The Ninth Circuit has established a three-part test to determine whether the Court may nevertheless remand for payment of benefits. The Court may

19

remand for payment of benefits only if: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "the record has been fully developed" and there are no "outstanding issues that must be resolved before a determination of disability can be made.;" and (3) whether, finding the relevant testimony credible as a matter of law, "the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler*, 775 F.3d at 1101 (internal quotation marks and brackets omitted) (quoting *Garrison*, 759 F.3d at 1020; *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

In the instant case, the step one of the test is satisfied because the ALJ has failed to provide legally sufficient reasons for affording little weight to the opinion of Dr. Mahapatra.  However, at step two, the Court finds that there are "outstanding issues that must be resolved before a determination of disability can be made." *Id.*  Specifically, the ALJ must address Dr. Mahapatra's opinion, incorporate Dr. Mahapatra's opinion into Plaintiff's residual functioning capacity, and determine whether, given Plaintiff's limitations, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Likewise, at step three, even accepting Dr. Mahapatra's opinion as true, the record leaves uncertain whether there are jobs in the national economy that Plaintiff can perform given the limitations identified by Dr. Mahapatra.  Therefore, the Court remands Plaintiff's disability application to the agency for further proceedings.

## IV.    CONCLUSION

For the reasons described above, the ALJ erred in failing to provide specific, legitimate reasons for giving little weight to the opinion of treating physician Dr. Mahapatra and for failing to address Dr. Mahapatra's opinions regarding Plaintiff's agoraphobia in formulating Plaintiff's residual functioning capacity.  Accordingly, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment, DENIES Commissioner's Cross-Motion for Summary Judgment, VACATES the ALJ's final decision, and REMANDS to the ALJ for reconsideration consistent with this Order.

United States District Court
Northern District of California

20

1  **IT IS SO ORDERED.**

2  Dated: August 15, 2016

3  _____

4  LUCY H. KOH
   United States District Judge

21